UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEENAN T. KNIGHT,

        Plaintiff,

   v.                                               Case No. 23-cv-886-pp

DENITA BALL, CPT. HANNAH,
LT. AVERY, OFFICER TAYLOR,
OFFICER T.E. WILLIAMS and JOHN DOES,

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT**

---

      Plaintiff Keenan T. Knight, who is confined at the Milwaukee County Jail and is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants violated his constitutional rights. Dkt. No. 1. The plaintiff also filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. This order addresses the motion for leave to proceed without prepaying the filing fee and screens the complaint.

      Because the defendants have not had the opportunity to decide whether to consent to a magistrate judge presiding over the case, the case was randomly referred to U.S. District Judge Pamela Pepper for the limited purpose of screening the complaint. This case will be returned to Magistrate Judge Nancy Joseph for further proceedings after entry of this order.

I.  **Motion for Leave to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let an incarcerated plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the incarcerated person must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time through deductions from his prisoner account. Id.

On July 7, 2023, the court ordered the plaintiff to pay $13.17 as an initial partial filing fee by August 7, 2023. Dkt. No. 5. The court received that fee on July 13, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will allow him to pay the full filing fee over time in the manner explained at the end of this order.

II. **Screening the Complaint**

A.  Federal Screening Standard

Under the PLRA the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes complaints filed by self-represented persons liberally and holds them to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

### B. The Plaintiff's Allegations

The plaintiff has sued Milwaukee County Sheriff Denita Ball and several individuals who worked at the Milwaukee County Jail: Captain Hannah, Lt. Avery, Officer Taylor, Officer T. E. Williams and Officer John Doe. Dkt. No. 1 at 1-2. He alleges that on May 31, 2023, while he was incarcerated at the Milwaukee County Jail Criminal Justice Facility, a correctional officer (not a defendant) was walking the unit and smelled smoke near the visiting booth area. Id. at 3. The correctional officer immediately ordered the entire unit to "lock in," and notified a supervisor—Lt. Avery—of the situation. Id. at 3-4. The plaintiff says that about fifteen minutes after he was ordered to lock in, the officer who'd smelled the smoke told the plaintiff that the plaintiff had a "no contact visit out on floor control." Id. at 4. The plaintiff alleges, however, that once he got to floor control, Avery—accompanied by Officer Taylor and Officer Williams—told him that he didn't have a visit, and that they would be conducting a search of his cell. Id. The plaintiff was he was placed in a no contact visiting booth on floor control (he does not say by whom). Id.

The plaintiff says that "very shortly" afterward, Captain Hannah and Sgt. Perry-Wright (not a defendant) responded to the unit "regarding this situation then returned to the area of floor control." Id. About an hour after all of this started, Avery, Taylor and Williams returned to floor control, and the plaintiff says that Avery told him that "they" searched the plaintiff's cell, finding four cigarettes and tobacco. Id. Avery told the plaintiff that the plaintiff was being placed on administrative/disciplinary segregation status and that he'd be

transferred to a different unit. Id. The plaintiff avers Avery requested that additional officers respond, and Williams pulled out his taser and pointed it at the plaintiff as Taylor and the Doe officer opening the no contact visiting booth door. Id. at 4-5. The plaintiff says that Williams told him that if the plaintiff made a move, Williams was going to tase him. Id. at 5. He says that as Taylor and the Doe officer were attempting to put him in handcuffs attached to a restraint, the plaintiff "adam[a]ntly" demanded to speak with Hannah "consistently." Id.

The plaintiff says that as his right hand was being cuffed, he was pulled out of the visiting booth facing Taylor and the Doe officer as they were trying to put his left hand in the cuffs. Id. He says Williams then holstered the taser, approached the plaintiff from behind and reached around the plaintiff's body to grab the restraint belt. Id. As Williams pulled on the belt to place it around the plaintiff's waist, Taylor and the Doe officer pulled the plaintiff's hands while they were cuffed behind the plaintiff. Id. He says that Williams then grabbed the plaintiff's head, wrapping his arms around the plaintiff's forehead and chin area; the plaintiff says he was thrown down to the ground while handcuffed. Id. He says he felt unknown officers "at [his] legs, mid section area, and head area" holding him down. Id. He says he felt an unknown officer strike him hard two times in his stomach, and that almost immediately after that he heard the unknown officer yell "taser, taser, taser, clear." Id. The plaintiff avers that Taylor shot him with the taser in the plaintiff's left back and upper left buttock

5

Case 2:23-cv-00886-NJ-PP    Filed 08/14/23    Page 5 of 12    Document 7

while the plaintiff was on the ground, handcuffed; he says this happened while Avery and "numerous officers" stood over him. Id.

The plaintiff alleges a Fourteenth Amendment due process claim, excessive force, mental and emotional distress and pain and suffering. Id. He sues all the defendants in their official and personal capacities. Id. at 6-7. He seeks injunctive relief—he wants the court to order new policies and procedures prohibiting the issuance of tasers to correctional officers at the Milwaukee County Jail—and nominal, compensatory and punitive damages. Id. at 8-9.

C. Analysis

The plaintiff has sued Denita Ball and Captain Hannah and states they should be held liable for failing to supervise the other defendants. Dkt. No. 1 at 6. Supervisors can be held liable for constitutional violations caused by their employees only where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003). In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. The plaintiff has not alleged that Ball or Hannah knew about the other defendants' conduct, which means he has not stated a claim against them. The court will dismiss Ball and Hannah.

The plaintiff claims that the remaining defendants used excessive force against him in violation of his constitutional rights. The plaintiff does not explain whether he was a pretrial detainee or a convicted person at the time of

6

this incident. If he was a pretrial detainee, his rights arise out of the Fourteenth Amendment's Due Process Clause; if he was a convicted person, his rights arise out of the Eighth Amendment. See Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015) (holding that an objective unreasonableness standard applies to claims brought by pretrial detainees while a subjective standard of whether the force was applied maliciously and sadistically applies to convicted prisoners). That said, the court need not determine at this stage whether the plaintiff was a pretrial detainee or a convicted person because the Eighth Amendment standard is the more stringent one. The court will analyze his claims under that standard first.

"Correctional officers violate the Eighth Amendment when they use force 'maliciously and sadistically for the very purpose of causing harm,' but not when they apply it in good faith to maintain or restore discipline." Jackson v. Angus, 808 F. Appx. 378, 382 (7th Cir. 2020). At this stage, the plaintiff has stated sufficient facts to proceed on an excessive force claim against Taylor, Williams and the John Doe officers. He alleges that Taylor, Williams and the Doe officers were unnecessarily rough and violent with him as they were removing him from the cell and handcuffing him, and that Williams tased him while he was on the ground, handcuffed. He also states a claim against Avery under a theory of supervisor liability because he alleged that Avery was standing over him, watching, while these things happened.

Because the plaintiff is bringing claims against two John Doe defendants, he will need to send the named defendants discovery requests to

7

identify the real names of the Doe defendants. Once the named defendants answer the complaint, the court will issue a scheduling order providing more information about how the plaintiff may identify and substitute the names of the Doe defendants.

As the court noted, the plaintiff has sued the defendants in their individual and official capacities. Claims against an official in his official capacity represent another way to plead claims against the entity that he represents or for which he works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). That means the court must construe the plaintiff's official capacity claims against the defendants as if he had brought those claims against Milwaukee County, the entity for whom the defendants work. A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691 (emphasis in the original). A municipality may "be held liable under § 1983 only for its own violations of federal law." Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To demonstrate municipal liability, the plaintiff 'must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook Cty., 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed

8

'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited ot action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479-80 (1986) (emphasis in the original). The plaintiff has not alleged that the defendants violated his rights under an unconstitutional policy or custom of Milwaukee County. He has alleged only that the defendants violated his constitutional rights through their own actions. The court will not allow the plaintiff to proceed on official capacity claims against the defendants.

Finally, it appears that the plaintiff wishes to bring a Wisconsin state law claim for intentional infliction of emotional distress. At this stage, the court will exercise supplemental jurisdiction over that state-law claim because it is so related to his excessive force claim that the two claims are part of the same case or controversy. See 28 U.S.C. §1367(c); Bailey v. City of Chicago, 779 F.3d 689, 696 (7th Cir. 2015).

### III. CONCLUSION

The court **ORDERS** that the plaintiff's motion for leave to proceed without prepaying the filing fee is **GRANTED**. Dkt. No. 2.

The court **DISMISSES** defendants Denita Ball and Captain Hannah.

Under an informal service agreement between Milwaukee County and this court, a copy of the complaint and this order will be electronically transmitted to Milwaukee County for service on defendants Lt. Avery, Officer Taylor and Officer T.E. Williams. The court **ORDERS** that, under the informal

service agreement, these defendants must file a responsive pleading to the complaint within 60 days.

The court will send a copy of this order to the Milwaukee County Sheriff and to Dennis Brand, 821 W. State Street, Room 224, Milwaukee, WI 53233.

The court **ORDERS** that the agency having custody of the plaintiff must collect from his institution trust account the **$336.83** balance of the filing fee by collecting monthly payments from his prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number assigned to this case. If the plaintiff is transferred to another county, state or federal institution, the transferring institution must forward a copy of this order along with his remaining balance to the receiving institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions. After the court enters the scheduling order, the plaintiff may make discovery requests (written questions or requests for documents) on the named defendants in an effort to identify the real names of the John Doe defendants. Once he knows the real name of the Doe defendants, the plaintiff must file a motion asking to substitute their real names for the Doe placeholders. Again, the plaintiff must not serve any discovery request upon the named defendants until *after* the court enters a scheduling order.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>517 E. Wisconsin Avenue, Room 362
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he does not file pleadings or other documents by the deadlines the court sets, the court may dismiss the case for his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. It is the plaintiff's responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the dismissal of this case without further notice.

The court is enclosing with this order a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution and Oshkosh Correctional Institution.

The court **RETURNS** this case to United States Magistrate Judge Nancy Joseph for further proceedings.

Dated in Milwaukee, Wisconsin this 14th day of August, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**