KEENAN T. KNIGHT,

    Plaintiff,

    v.

AMIKA AVERY,
JORDAN TAYLOR, and
TERRELL WILLIAMS

    Defendants.

Case No. 23-cv-886

## DECLARATION OF JEFFERY LEFLORE

STATE OF WISCONSIN    )
                        ) SS
MILWAUKEE COUNTY    )

I, Jeffery Leflore, declare pursuant to 28 U.S.C. § 1746, and under penalty of perjury that the following is true and correct:

1.    At all times relevant to this action, I was employed by the Milwaukee County Sheriff's Office ("MCSO"), including on May 31, 2023, held the position of corrections officer ("officer"), and was assigned to the Milwaukee County Jail (the "Jail").

2.    I base this declaration on my personal knowledge of the facts and circumstances attested to herein and my review of relevant records of Milwaukee County kept in the ordinary course of business.

3. One of my essential duties as an officer at the Jail include ensuring the safety and security of the Jail and its occupants as well as staff.

4. Occupants that actively and deliberately resist the orders of corrections staff become a threat to the safety and security of the Jail, the staff, and the occupants.

5. Some of the equipment that corrections officers at the Jail carry to gain compliance of an actively resisting occupant include oleoresin capsicum (OC) spray and a taser gun.

6. I am familiar with Keenan Knight and recall him being an occupant in the Jail in 2023. I recall that he had a large build, standing approximately 6'4" and weighing approximately 275 pounds. I also was aware of other instances occurring prior to this incident in which Mr. Knight created disturbances in the Jail that required officers to use force to be able to gain control of the situation he created. Let it also be noted that Mr. Knight has spent a lot of time in 4D which is the Jail's disciplinary housing unit, due to multiple disturbances he's created throughout his time at the Jail.

7. On May 31, 2023, I was assigned to work second shift (1400 – 2230 hours) as a corrections officer in Pod 4A at the Jail.

8. At approximately 1815 hours, I arrived on the 6th Floor as backup after receiving a call requesting additional assistance as an occupant had been tased. At the time of the call, I did not know the occupant was Mr. Knight.

9. Upon arriving on the 6th Floor, I witnessed occupant Keenan Knight laying on the floor partially secured in a RIPP restraint belt. Medical staff arrived to treat Mr. Knight after he was tased.

2

10.     A RIPP restraint belt is a Velcro belt that is placed around the midsection of an occupant and secured in the back of the occupant. A D-ring is attached to the Velcro belt. A metal ring then connects the D-ring to the handcuffs which secures the occupant's hands.

11.     An occupant who is not fully restrained in a RIPP restraint belt can pose significant security concerns, particularly an occupant with the size and stature of Mr. Knight. In mere seconds, Mr. Knight would be able to use the belt portion of the restraint device as a weapon to hit or choke officers and/or other occupants. As such, occupants who are not fully restrained in a RIPP restraint device are significant security concerns.

12.     I did not witness, and was not present, when Mr. Knight was tased, or for any other events that occurred prior to Mr. Knight being on the ground during the relevant time period.

13.     Officer Jordan Taylor and I assisted Mr. Knight to his feet and Officer Deone Dortch attempted to secure Mr. Knight in the RIPP restraint belt.

14.     After Officer Deone Dortch secured the RIPP restraint belt, Mr. Knight became uncooperative, so Officers Jordan Taylor, Deone Dortch and I secured Mr. Knight to the wall.

15.     After Mr. Knight stopped actively resisting and began to comply and follow officers' orders, at approximately 1823 hours, I then assisted Officers Taylor and Dortch in the escort Mr. Knight to housing unit 4A, where he was housed and secured without further incident.

3

16.     I did not observe any excessive use of force during the incident involving Mr. Knight on May 31, 2023. If I had, I would have notified a superior officer.

17.     Additionally, I was trained by Officer Williams and I have worked with Officer Williams for over four years. During this period of time, I have observed Officer Williams remain professional, calm and level-headed. I have never observed him use more force than is necessary to gain compliance of an occupant and to secure the safety of the facility.

        (The remainder of this page is intentionally left blank).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on July 30, 2024.


s/ Jeffery LeFlore
JEFFERY LEFLORE