United States District Court
Eastern District of Wisconsin

Keenan T. Knight
    Plaintiff

v.    Case No. 23-CV-886

Amika Avery,
Jordan Taylor,
Terrell Williams,
    Defendants

PLAINTIFF REPLY TO DEFENDANTS REPLY IN SUPPORT OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Plaintiff, Keenan Knight, pro se, was allowed to proceed on 14th Amendment claims against Amika Avery, Jordan Taylor, and Terrell Williams for Excessive force, and claim of failure to intervene against Amika Avery. Knight was allowed to proceed on the excessive force claims as he alleged that Williams very aggressively and violently grabbed his head and yanked him down to the ground after he first reached around Knight's body and pull back on the RIPP belt causing Taylor and Dortch to pull back on Knight's secured handcuffed hands, while pinned down on the ground Avery attempted a pressure point and then punched Knight in the stomach twice, and while still pinned down and subdued by seven officers, including Taylor, Taylor pulled out his taser yelled Move, Taser

1

Taser, Taser and then shot Knight with his tases. Knight was allowed to proceed on failure to intervene claim against Aussy for failing to prevent and intervene in Taylor and Williams use of excessive force.

## ARGUMENT

1. The defendants begin their argument by asking this court to accept as true their proposed findings of fact as undisputed because plaintiff failed to comply with the requirements of Fed R Civ P 56(c)(1)(A) and Civ L R 56(b)(2)(B)(i). In response to the defendants objections Knight has filed a amended reply to Defendants PFOF in compliance with the Federal and local rules, pursuant to Fed R Civ P 15.

## LEGAL STANDARD

2. The fourteenth amendment applies to excessive force claims brought by pre-conviction detainees and the standard is solely objective. Hardeman v. Carran, 933 F.3d 816, 822 (7th cir 2019)(quoting Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015). The fourteenth amendment's Due process clause "Protects a pretrial detainee from the use of excessive force that amounts to punishment" Hendrickson, 135 S. Ct. 2466, 2473 (2015). A pretrial detainee must show only that the force purposely

2

or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. at 396-97. "Objective reasonableness turns on the facts and circumstances of each particular case." Kingsley v. Hendrickson, 576 U.S. at 397 (quoting Graham v. Conner 490 U.S. 386, 396 (1989)

### THE DEFENDANTS USE OF FORCE Was Unreasonable

In Mitchell, the plaintiff alleged that after the fight was with the other inmates and he was in restraints being escorted out of the dayroom one of the guards escorting him gratuitously twisted his wrist causing pain which caused him to yell out in pain, Mitchell, supra at 875. The guards then slammed him onto the table cutting his chin while one laughed saying "did that hurt little pussy...". The District court granted summary judgment to the guards stating in relevant part, "whether or not Mitchell was intentionally resisting or simply reaching to cichers deliberate effort to cause pain by twisting his wrist the guards reasonably could perceived Mitchell struggling while exiting the dayroom as required additional force." Id. at 876. The Seventh Circuit reversed summary. The Seventh Circuit said there was sufficient dispute about how much force the guard used and whether they acted in good faith. Mitchell v. Krueger, 594 Fed. Appx. 874 (7th Cir. 2014) (unpublished)

Mitchell was 128 pounds, handcuffed in the back, with two guards on each side of him holding his arms and had him by atleast 100 pounds. It was the guard who gratuitously

3

allow himself to be handcuffed and said there would be a fight if officers touched him. He contend that officers forced him to the ground and caused him to hit his head, punched him in the face, and tased him after he had been subdued. The Judge in this case ruled that Brig's evidence and the video footage raised genuine dispute of material fact about whether Brig's tasing was justified.

Similarly, in Knight's case, Knight was placed in a non contact booth so that his cell could be searched. Lt. Avery informed Knight that he would be placed on discipline status and adseg. Knight adamently requested to speak with Capt Hannah. Knight was unresponsive when asked if he would comply with being handcuffed. Deputy Rivers opened the non contact booth door and Taylor again asked Knight to cuff up as Knight remained silent and unresponse. Officer Williams pull out his taser and point it at Knight while directing Taylor to cuff me. Officer Taylor with the assistance of officer Dortch guided Knight out of the booth and secured both of Knight's hands. Officer Williams approached Knight from the back and reached around Knight and pulled back on the RIPP belt causing Taylor and Williams to pull Knights hand back towards them and Williams immediately grab Knight violently by the head and yank him down to the ground. Knight admit that he had an adverse reaction to being thrown down to the ground in such manner, however seven officers, consisting of officers Taylor, Williams, Dortch

4

twisted Mitchell's wrist causing him to react in pain and use the reaction they caused to slam Mitchell onto a table cutting his chin. That case went to trial. Similar to Knight's case, Knight was handcuffed and both of his hands were held and secured by Taylor and Dortch (Decl of Knight, 36) when Williams reached around Knight's body and grabbed the Ripp belt which caused Taylor and Dortch to pull my handcuffed hands back towards them (Knight Decl, 38-39). Williams then immediately let go of the Ripp belt grabbed Knight by his head and violently yanked me down to the ground in a dangerous and awkward manner (Knight Decl, 40). See Davis v. Wessel 792 F.3d 795 (7th cir 2015) citing Hart v. Sheahan 376 F.3d 887 (7th cir 2006) (The 7th cir. has clearly explained that "if the act involves the gratuitous infliction of pain and suffering it is deemed punishment, and as long as the act was intended it is a violation of the prisoners constitutional right even if the act was not intended as punishment"); Hendrickson v. Cooper, 589 F.3d 887 (7th cir 2009) (upholding jury's finding that guard had used excessive force by provoking inmate and citing his reaction as excuse to attack him)

In Berg v. Schultz, 2021 WL 4282525, Jordan Berg was dissatisfied with a new library rule at Columbia Correctional Institution and decided to hold a "sit in" in the prison's dayroom until he could speak with a captain about the new rule. He refused to comply with officers orders to

Lt. Avery, Saavedra, Dangerfield, and Deputy Rivera all responded and subdued Knight and had Knight pinned down to the ground when Avery attempted a pressure point then punched Knight in the stomach twice and Taylor yelled move TASER TASER TASER and shot Knight with his taser.

As in BERG, once Knight was pinned down on the ground and not resisting the officers Avery punched Knight twice in the stomach after trying a pressure point. Then Taylor raise up slightly and yell move TASER Taser Taser. Knight was not actually resisting the officers at that time he was punched by Avery and Tased by Taylor. The officers had gained control of Knight, had him subdued, he had "submitted to authority" and he did not pose a threat. See Dockery v. Blackburn, 911 F.3d 458, 468 (7th Cir 2018); Morlin v. City of East Chicago 349 F.3d 982 (7th Cir 2003) (vacating Grant of Summary Judgment for Defendant Police officers on Excessive force claim under Fourth Amendment since Jury Reasonably could find that Plaintiff resisted only after officers had grabbed and shoved him to the floor.

If the only evidence presented were the parties conflicting statements, there would be a genuine dispute of material fact for a jury to decide. If a jury were to credit Knight's version - That Knight never made the statements "I aint complying, we might as well get the party started" or "if Im going on adseg I might as well

6

make it for a reason. That Knight did not pull his hands away from Williams, that Knight did not grab Williams by his shirt collar, and that Knight was pinned down and subdue by seven officers, there would have been no need for Williams to violently yank plaintiff down to the ground, for Avery to attempt a pressure point move then punch Knight in the stomach twice, or for officer Taylor to shoot Knight who was pinned down subdued not resisting, with his taser. See Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004)

While Plaintiff and the defendants express different versions of events the most important piece of evidence is the video evidence of the incident. The Supreme Court has held that, "when opposing parties tell two different stories, one which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purpose of ruling on a motion for summary Judgment. Scott v. Harris 550 U.S 372, 378-81 (2007). In viewing the video footage, the video do not establish that Plaintiff pulled his hands, which were secured and firmly held by officer Taylor and Dortch, away from officer William, that plaintiff ever grabbed officer Williams shirt collar, that plaintiff was resisting when Avery punched plaintiff in the stomach twice, or that Plaintiff was resisting officers who had him pinned down and subdued when Taylor pulled out his taser and shot plaintiff with that taser. In short the Plaintiff

has demonstrated that there is a genuine factual dispute that Defendants use excessive force against him by violently yanking him down to the ground despite not resisting officers, punching him in the stomach while pinned down and subdued, then tasing him while pinned down subdue not resisting the officer. Bell v. Irwin, 321 F.3d 637 (7th Cir 2003) (when material facts are in dispute case must go to a jury whether argument is police acted unreasonably due to lack of P/c or they acted unreasonably because they responded overzealously and with too little concern for safety). The Defendants excessive use of force was objectively unreasonable and unjustifiable and the defendant are not entitled to summary judgment.

DEFENDANTS DECLARATIONS ARE IN BAD FAITH, PLAINLY FALSE AND SHOULD BE STRICKEN FROM SUMMARY JUDGMENT CONSIDERATION

Declarations are essential for judges making summary judgment decisions, Fed R. Civ. P. 56(c)(4), and are declared under penalty of perjury 28 U.S.C § 1745(1)-(2)

A court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct

Ramirez v. T & H Lemont, Inc, 845 F.3d 772, 776 (7th cir 2016) Sanctions imposed pursuant to the courts inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in Bad Faith. A hefty sanction is warranted to discourage defendants and other litigants from engaging in similar conduct in the future. Bowers v. Foster, 2017 WL 473886 *3 (U.S. E.D. of Wis. Feb 3, 2017)(citing Greviskes v. Univ. Research Ass'n Inc, 417 F.3d 752 (7th cir 2005); Ayoubi v. Dart, 640 F. App'x 524, 528-29 (7th cir 2016)

Defendants Avery, Taylor, and Williams submitted their sworn Declaration under oath as evidence in this litigation (ECF No. 35, 36, 37)

Averys Declaration: (ECF No. 35) Avery submitted this declaration to support her contentions of what happened and why she conducted herself in the manner that she did. Avery states "... I arrived at the non contact booth and I began a dialogue with him about contraband found in his cell. I explained to him that he would be placed in a RIPP belt and moved to housing unit 4A pending discipline and also that he was being placed on administrative segregation per Captain Hannah's orders and asked if he would comply with the change over process. At this time, Mr Knight began to demand to speak with Captain hannah and was verbalizing

that he was going to resist and not comply with my orders..." (ECF No. 35-14), "... I observed one of Knight's wrist being secured into the handcuff portion of the Ripp restraint belt by officer Taylor. Officer Dortch was attempting to secure the other hand, but he never cuffed Mr. Knight's wrist..." (ECF No 35-19), "During this interaction, Mr. Knight tensed up and started resisting..." (ECF No. 35-20), "While stabilized on the ground, I observed Mr. Knight grab the collar of Officer Williams' shirt..." (ECF No. 35-22)

Taylor Declaration: (ECF No. 36) Taylor submitted this declaration to support his contention of what happened and why he conducted himself in manner that he did. Taylor states, "... while inside the non contact visiting booth, Mr. Knight was repeatedly cracking his knuckles and making fist, which was indicative to me that Mr. Knight was not going to go without a fight." (ECF No. 36-13), "... I then attempted to secure Mr. Knight's other hand in the handcuff portion of the Ripp restraint belt but was unable due to him tensing up and moving. At this time Officer Williams holstered his taser and moved behind Knight to attempt to secure the Ripp belt around Knight's waist. At this time I observed Knight tense up and ball his fist up, which signified to me he was getting into a pre-attack posture and attempted assault was imminent..." (ECF No. 36-18), "While Mr. Knight was decentralized on the ground, I observed him grab officer Williams shirt

collar..." (ECF No. 36-1)

Williams Declaration: (ECF No. 37) Williams submitted this declaration to support his contention of what happened and why he conducted himself in the manner that he did. Williams state "... Mr. Knight asked U. Avery if he was going on administrative Segregation and she informed him that he would be placed on adseg once his discipline time is completed and he responded "well I aint complying then we might as well get this period started". I took that to mean, from previous experience with Mr. Knight, that he was going to resist orders and our efforts to escort him to a different location within the Jail." (ECF No. 37-14), Knight continued to refuse all orders to comply and I heard him say "if I'm going on adseg I might as well make it for a reason". This confirmed noncompliance ..." (ECF No. 37-17), Mr. Knight was still actively resisting and not permitting officers Taylor and Dortch to secure him ..." (ECF No. 37-21), while stabalized on the ground, Mr. Knight continued to resist staff and grabbed the collar of my shirt to pull me closer to him..." (ECF No 37-2

In addition to the above false statement made by the Defendants, non-defendants, Deputy Raul Rivera, officer shunta Dangerfield, and officer Deons Dortch assisted Defendants in their incident reports. Deputy Rivera stated, "Mr. Knight was angry, screaming and resisting. Mr. Knight was

subsequently decentralized to the floor due to his actions..." (Dingman Decl Ex 2 pg 17). Officer Dangerfield states, "... I observed occupant Keenan Knight fighting with responding officers. I then witnessed occupant Knight being resistant when CO Taylor, CO Dortch, and CO Williams was attempting to secure occupant in a RIPP restraint belt..." (Dingman Decl Ex 2 pg 21) Officer Dortch stated, " Knight had grabbed officer williams collar and officer williams ordered him to let it go, Knight refused..." (Dingman Decl Ex 2 pg 24). These false incident reports contradict what is seen and heard on the video footage and shows that the defendants are in cahoots with falsifying their incident reports and declarations to justify reasoning for their excessive use of force. This goes directly to unreasonable, malicious, and sadistic intent.

The defendants are very specific about the statements Knight allegedly made and that Knight was resisting being cuffed up and pulling away from them. However when viewing the incident report of officer taylor, Taylor stated, "After several attempts staff was able to get Knight out of the non contact booth where he was secured" (Dingman Decl., Ex 2 pg 19); Avery stated "... Knight's hands were secured..." (Dingman Decl Ex 2 pg 19); officer Dortch stated "... Knight's hands were secured..."(Dingman Decl Ex 2 pg 24), along with the audio/visual video footage and Body camera footage that the defendants themselves provided (ECF No. 34-3; 34-4)

it becomes clear that Knight did not make any threatening statements indicating resistiveness or combativeness. In addition, when reviewing the audio/visual video footage that the defendants provided, Knight's hands are shown secured in handcuffs by Taylor and Dortch (ECF No. 34-3 at 18:13:43 - 18:13:52; ECF No. 34-4 at 18:13:39 - 18:13:51) when Williams approached Knight from behind and reached around Knight. Knight is not resisting or pulling away from Taylor or Dortch or pulling away from Williams when Knight is violently yanked and thrown down to the ground. Knight is quickly pinned down and subdued by seven officers when Avery punched Knight in the stomach and Taylor followed by shooting Knight with his taser, all while Knight is pinned down subdue and not resisting any of the officer. Knight never grabbed Williams by his shirt collar. Taylor v. Anderson, No 19-CV-300JDP, 2021 WL 8082648, at *7 (W.O. Wis. March 3, 2021) (concluding the party's claims were factually unsupported and allegations alleged directly contradicted the video evidence) The Defendants Declarations should be stricken from summary judgment consideration and if the court is not willing to strike the false statements of all three defendants, then a jury should decide whether the falsehoods of their declarations was their motivations to act in bad faith and applying and using the amount of force that they used against Knight.

## FAILURE TO INTERVENE CLAIM

Plaintiff Knight alleges that Lt. Avery failed to intervene and prevent officers Williams and Taylor from using unreasonable excessive force against him. "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had a reason to know... that excessive force was being used... and the officer had a realistic opportunity to intervene to prevent the harm from occurring. Yang v. Hardin, 37 F.3d 282 (7th cir 1994). The court of appeals has stated that "a realistic opportunity to intervene may exist whenever an officer could have called for a back up, called for help, or at least cautioned "the excessive force defendant" to stop". Abdullahi v. City of Madison 423 F.3d 763, 774 (7th cir 2005) The same court has made clear that this analysis almost always implicates questions of facts for a jury (quoting Lanigan v. Vill of E. Hazel Crest, Ill., 110 F.3d 467, 478 (7th cir 1997) ("whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally as issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise") As shown in the video footage Plaintiff was not resisting Williams when Williams violently yanked Knight down to the floor, and plaintiff was subdued and pinned down not resisting by seven officers when Taylor yelled "Move, Taser, Taser, Taser and shot plaintiff with his Taser. Lt Avery could have told officer Taylor Knight is subdued, stopped

Taylor from tasing Knight, or at the very least, Ct Avery could have protested that plaintiff was not resisting to flag Taylor that using the taser was unnecessary.

### DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The qualified immunity doctrine protects government officials from civil liability when they perform discretionary functions "insofar" as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) To determine the applicability of qualified immunity at the summary judgment stage, a court must engage in a two-part analysis to determine whether (1) the facts, viewed in the light most favorable to the non-movant, establish the violation of a constitutional right, and (2) the constitutional right at issue was "clearly established" at the time of the officials purportedly illegitimate conduct. Leiser v. Kloth, 933 F.3d 696, 701 (7th Cir 2019). A right is clearly established when its contours are "sufficiently clear that every reasonable official would have understood what he is doing violates that right. Reichle v. Howard 566 U.S. 658, 644 (2012). It is not necessary that there be cases "directly on point" but "existing precedent must have placed the statutory or constitutional question beyond debate. Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) If the facts are as Plaintiff asserts, a reasonable

officer would understand that using his taser to subdue the non-combative and non-resistant Plaintiff was an unreasonable use of force. see Lewis, 581 F.3d at 479 (holding it was clearly established as of at least 2009 that it was unreasonable to use a taser on a non-resistant prone inmate without warning).

Furthermore, the defendants claims of immunity depends on disputed facts. So long as the evidence would support a reasonable verdict that defendants acted for purpose of causing harm, defendant cannot establish that they are entitled to qualified immunity. see Turner v. Rataczak, 28 F. Supp 3d 818, 824 (W.D. Wis. 2014). Defendants are not entitled to summary judgment on the grounds of qualified immunity.

## CONCLUSION

For the reasons set forth herein, as well as those articulated in Plaintiff's initial memorandum of law, Plaintiff respectfully request that this court deny defendant motion for summary judgment and allow this case to proceed to trial.

Dated at Green Bay, WI this 22nd day of December

*Keenan Knight*